**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X
CHUNHONG MEI,
 *on behalf of herself and others similarly situated*,

                                   Plaintiffs,        **Civil Action No.: 19-cv-3309**

                    -against-                       **COLLECTIVE ACTION**
                                               (29 U.S.C. §216(b))

DP HOSPITALITY GROUP, LLC.,         **and CLASS ACTION**
d/b/a "Brooklyn Chop House",        (Fed. R. Civ. P. 23)
ROBERT CUMMINS a/k/a Robert "Don Pooh"
Cummins, STRATIS MORFOGEN, and       **COMPLAINT**
"John Doe" #s 1-2
                          Defendants.       Jury Trial Demanded
-------------------------------------------------------------- X

    Plaintiff CHUNHONG MEI, on behalf of herself and all others similarly situated, by and through her attorney, Ricardo Morel, Esq., brings this Complaint against Defendants DP HOSPITALITY GROUP LLC d/b/a Brooklyn Chop House, ROBERT "Don Pooh" CUMMINS, STRATIS MORFOGEN and "John Doe" #1-2  (collectively, "Defendants"), jointly and severally, and alleges as follows:

### NATURE OF THE ACTION

    1.    This action is brought by the Plaintiff Chunhong Mei, on behalf of herself as well as other employees similarly situated, against the Defendants for violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* and New York Labor Law (NYLL), Article 19 §§ 633 and 652; NYLL Article 6 *et seq*.; 12 New York Codes, Rules and Regulations (NYCRR) §142-2.2; 12 NYCRR §142-2.4; and 12 NYCRR §137-1.7; and pursuant to Fed. R. Civ. P. 23, arising from Defendants' various willful and unlawful employment policies, patterns and practices.

1

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay its employees, including the Plaintiff, legally-required wages and overtime compensation for all hours worked over forty (40) each workweek.

3.      Plaintiff Chunhong Mei alleges pursuant to the FLSA, that she is entitled to recover from the Defendants: (1) unpaid minimum wage and unpaid overtime wages; (2) liquidated damages; (3) prejudgment and post-judgment interest; and (4) attorney's fees and costs.

4.      Plaintiff alleges pursuant to NYLL § 650 *et seq.* and 12 New York Codes, Rules and Regulations § 146 that she is entitled to recover from the Defendants: (1) unpaid overtime compensation; (2) up to five thousand dollars ($5,000) for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday; (3) up to five thousand dollars ($5,000) for Defendants' failure to provide a proper paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day; (4) liquidated damages equal to the sum of unpaid wages under NY Wage Theft Prevention Act; (5) 9% simple prejudgment interest provided by NYLL; (6) post-judgment interest; (7) attorney's fees and costs; and (8) such further and other relief as the Court deems proper.

## JURISDICTION

5.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b) and 28 U.S.C. §§1331 and 1337.

6.      This Court has jurisdiction over state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. §1367(a), because these claims are so closely related to Plaintiff's federal wage and hour claims that they form parts of the same case or controversy under Article III of the United States Constitution.

7.      The statute of limitations under the FLSA for willful violations is three (3) years. *See* 29 U.S.C. 255 (a). The statute of limitations under the NYLL is six (6) years. *See* New York Labor Law §198(3).

## VENUE

8.      Venue for this action is proper in the Southern District of New York under 28 U.S.C. §§ 1391(b) and (c) because Defendants conduct business and maintain a business address in this District; and the acts and omissions giving rise to the claims alleged herein occurred in this District.

## THE PARTIES

## PLAINTIFF

9.       Plaintiff **CHUNHONG MEI** is an individual residing in the State of New York who was employed by Defendants to work as a Sushi Chef at 150 Nassau Street, New York, NY 10038-1529 from **October 1, 2018 to March 8, 2019**.

10.      At all times during the term of Plaintiff's employment at Defendants' restaurant operations, she was an employee within the meaning of the FLSA and NYLL.

11.      At all times relevant to this action, Plaintiff was engaged in commerce because Plaintiff handled, used or otherwise worked on goods or materials that had been moved in or produced for interstate commerce. Plaintiff was a non-exempt employee,

economically dependent on the business of the Defendants, and her labor was an integral part essential to Defendants' business.

**DEFENDANTS**

***Corporate Defendant***

12.     Defendant DP HOSPITALITY GROUP, LLC. d/b/a Brooklyn Chop House is a domestic limited liability company organized under the laws of the State of New York with a principal address at 150 Nassau Street, New York, NY 10038.

13.     From 02/09/2018 to the present time, DP HOSPITALITY GROUP, LLC d/b/a Brooklyn Chop House operated and continues to operate a restaurant located at 150 Nassau Street, New York, NY. It is owned, operated and controlled by defendants ROBERT CUMMINS and STRATIS MORFOGEN.

14.     During the relevant time period, the corporate defendant was an Employer within the meaning of the FLSA and the NYLL.

15.     DP HOSPITALITY GROUP LLC d/b/a Brooklyn Chop House is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000.00) per year.

16.     DP HOSPITALITY GROUP, LLC d/b/a Brooklyn Chop House  at all relevant times has been an enterprise engaged in commerce within the meaning of the FLSA that has had, and has employees engaged in commerce or in the production of goods for commerce and handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person. Defendants purchased and handled goods moved in interstate commerce.

*Owner/Operator Defendants*

17.     The Individual Defendants are officers, directors, managers, and/or majority shareholders or owners of the Corporate Defendant. Among the ten largest shareholders and/or LLC members, they are individually responsible for unpaid wages under the New York business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

18.     **ROBERT CUMMINS** a/k/a Robert "Don Pooh" Cummins is and has been an owner, officer, a principal shareholder of DP HOSPITALITY GROUP LLC d/b/a Brooklyn Chop House, and an owner of the restaurant where Plaintiff worked as a sushi chef from 10/01/2018 to 03/08/2019 at 150 Nassau Street, New York, NY.

19.     Robert Cummins acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and regulations thereunder, and is jointly and severally liable with DP Hospitality Group, LLC.

20.     **STRATIS MORFOGEN** has been and continues to be the Executive Managing Director and Managing Partner at DP Hospitality Group, LLC at the restaurant operations where Plaintiffs have been employed at 150 Nassau Street, New York, NY.

21.     Stratis Morfogen is a part-owner and active, day-to-day manager at DP HOSPITALITY GROUP, LLC d/b/a Brooklyn Chop House, and (1) has the power to hire and fire employees; (2) supervised and controlled employee work schedules and conditions of employment; (3) determined the rate and method of payment, and (4) maintained employee records at DP Hospitality Group, LLC d/b/a Brooklyn Chop House, 150 Nassau Street, New York, NY.

22.     Stratis Morfogen acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29

C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with DP HOSPITALITY GROUP, LLC.

23.     By virtue of his position, Defendant STRATIS MORFOGEN is personally liable for debts, wages or salaries owing to the Plaintiffs, for services performed by Plaintiffs for DP Hospitality Group LLC., pursuant to NY Bus. Corporation Law §630(a).

24.     **"JOHN DOE #1,"** known as "Boss" to Plaintiffs, (1) had power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates/methods of payment, and (4) maintained employee records at DP HOSPITALITY GROUP, LLC.

25.     "John Doe #1" acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, as well as NYLL § 2 and regulations promulgated thereunder, and is jointly and severally liable with DP HOSPITALITY GROUP, LLC d/b/a Brooklyn Chop House.

26.     Upon information and belief, "John Doe #1" has manifested racial discrimination toward Chinese employees, treating them with palpable disdain. Plaintiff and other Chinese employees were paid lower wages than other employees, for work that is normally compensated at a higher rate. The Plaintiff, a Sushi Chef in NYC, received a fixed weekly salary that was lower than, for example, non-Chinese dishwashers.[1]

---

[1] Sushi chefs are highly-paid, especially in New York City. Salaries for these skilled employees typically range from $4,000 to $12,000 per month in New York City. Based on anonymously submitted salaries to Indeed by Sushi Chef employees, users, and collected from past and present job advertisements in the past 36 months, the average salary for a Sushi Chef in New York City is 16% above the national average. Plaintiff here was paid $615 per week, regardless the hours that she worked. Non-Chinese employees in less skilled jobs were paid higher wages than Plaintiff. This raises a red flag with regard to our labor laws, and in the context of an EEOC claim as well.

27.     **"JOHN DOE #2,"** known as "Boss" to Plaintiff, (1) had power to hire and fire employees, (2) supervised and controlled work schedules and conditions of employment, (3) determined employee rates/methods of payment, and (4) maintained employee records at DP HOSPITALITY GROUP, LLC d/b/a Brooklyn Chop House.

28.     "John Doe #2" acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, as well as NYLL § 2, and regulations promulgated thereunder.

29.     "John Doe #2" is thereby jointly and severally liable with DP HOSPITALITY GROUP, LLC d/b/a Brooklyn Chop House.

30.     Moreover, "John Doe #2" also manifested racial discrimination toward Chinese employees, treating them with palpable disdain. Plaintiff and other Chinese employees were paid lower wages than other employees, for work that is normally compensated at a higher rate. The Plaintiff, a Sushi Chef in a NYC restaurant, received a fixed salary lower than less-skilled non-Chinese employees. *See* footnote no. 1.

## STATEMENT OF FACTS

31.     Beginning on or about October 1, 2018, Defendant DP HOSPITALITY GROUP, LLC d/b/a Brooklyn Chop House (hereinafter, "DP") employed Plaintiff CHUNHONG MEI to perform work as a Sushi Chef in Defendant's restaurant operations at 150 Nassau Street, New York, NY 10038.

32.     From **October 1, 2018 through March 8, 2019** (22 weeks + 5 days)**,** while working for Defendants DP, ROBERT CUMMINS, STRATIS MORFOGEN and "JOHN DOE" #s 1 and 2 (hereinafter, "Defendants"), Plaintiff was required to work six (6) days each week on the following schedule:

Monday – Wednesday: **1:00 P.M. to 11:00 P.M.,**

Thursday – Saturday:   **2:00 PM to 12 A.M.**

Plaintiff had one day off, either Sunday or Monday.

Thus, Plaintiff worked **sixty (60) hours weekly**. However, she was sometimes required to work longer than ten (10) hours in a single shift. She was not paid "Spread-of-Hours" compensation for these shifts in excess of ten (10) hours, as required by NYLL.

33.     Plaintiff worked at least  **twenty (20) hours overtime** each week, over a period of twenty-two (22) weeks + five (5) days.

34.     During the period of her employment, Plaintiff was paid a fixed amount of **$615.00 per week**, regardless how many hours she actually worked.

35.     Thus, Plaintiff's gross regular hourly rate of pay was **$15.37** (NY DOL, $615 / 40). Under NYLL, her Overtime hourly rate was thus $ **$23.06**. Under FLSA calculation (divided by total 60 hours) her regular hourly rate was **$10.25**, below the prevailing minimum wage during the relevant period herein.

36.     From October 2018 to December 31, 2018, New York City's minimum wage for businesses with 11 or more employees was $11.00 per hour. Beginning on January 1, 2019, New York City's minimum wage for businesses with 11 or more employees was $15.00 per hour. The restaurant where Plaintiff worked employs more than 40 employees. It is an eatery occupying 5,000 square feet, with 185 seats.

37.     By FLSA calculation, Defendants failed to comply with minimum wage requirements, because Plaintiff was paid an hourly rate of **$10.25**. [$615 / 60] [2]

Moreover, Defendants never compensated Plaintiff for the said overtime hours, i.e., in excess of forty (40) in any workweek, at the rate of 1.5 times the regular rate.

---

[2] Under FLSA, regular hourly rate is determined by dividing fixed payment by total hours worked. New York Dept of Labor divides fixed weekly rate by 40 hours. After 40 hours in a workweek, it's 1.5 times the regular rate of pay.

38.     Termination:  On March 8, 2019, Plaintiff was terminated from her employment, not because of any deficiency in her performance, but coincidental with the approaching 6-month limit (April 1, 2019) for Plaintiff to qualify for unemployment benefits, thus depriving Plaintiff of availing herself of the said benefit while unemployed. While employed at will, Plaintiff never agreed to a temporary job; underpaid, at that.

39.     The NYLL prohibits employers from making any deductions from an employer's wages except those permitted by law (NYLL §193). By failing to pay Plaintiff her due overtime wages, Defendants in effect regularly made unlawful deductions from Plaintiff's wages, which they pocketed.

40.     By knowingly and willfully failing to pay Plaintiff her proper wages, Defendants unjustly enriched themselves.

### *Record-Keeping and Notice Obligations*

41.     Upon information and belief, Defendants knowingly and willfully disregarded record-keeping requirements of the Fair Labor Standards Act, applicable New York State Labor Law, and the supporting regulations, by failing to maintain full and accurate records of Plaintiff's hours and wages, including any allowances claimed, deductions claimed, in violation of the FLSA, NYLL and federal and state regulations. 29 U.S.C. §211(c); NYLL §661; N.Y.C.R.R. Title 12, 142-2.6.

42.     Defendants paid Plaintiff a fixed wage, regardless the number of hours that she worked. This is reflected in the purported Wage Statements that Defendants provided Plaintiff. Such "Earnings Statements" are defective, unreliable, and non-conforming to the requirements of the FLSA and NYLL, because they do not account for required compensation at 1.5 times the regular rate of pay for hours in excess of 40.

43.     During Plaintiff's employment at DP's "Brooklyn Chop House" restaurant in Brooklyn,  Defendants failed to display, in a place accessible to employees, and in a visually conspicuous manner, in Plaintiff's language (in this instance, Mandarin), the notices of employee rights as required under the FLSA and federal and state regulations, or to otherwise provide Plaintiff with information about her legal rights. Posters in Plaintiff's language  are readily available from the U.S. Dept. of Labor.

44.     At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with a Time of Hire Notice.

45.     At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with an accurate paystub on each pay day, conforming to the requirements of the FLSA and NYLL.

## Willful Violations

46.     Defendants' deliberate omissions and overt acts in violation of the applicable federal and state laws, such as Defendants' failure to pay proper wages or to keep proper and accurate records, have been willful, knowing and malicious.

47.     Defendants knew, or should have known, that the nonpayment of proper wages and overtime compensation would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

## COLLECTIVE ACTION ALLEGATIONS

48.     Plaintiff re-alleges the paragraphs above as if thoroughly set forth herein.

49.     Plaintiff brings this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by he Defendants for up to the last three (3) years, through entry of

judgment in this case (the "Collective Action Period") and who were not compensated at least the hourly minimum wage and/or at one and one half times their regular rate for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings his NYLL claims pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), on behalf of all non-exempt persons employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

51.     All said persons, including Plaintiff, are referred to herein as the "Class."

52.     The Class members are readily ascertainable.  The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23 of the Fed. R. Civ. P.

### *Numerosity*

53.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown at this time, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are over forty (40) members in the Class.

*__Commonality__*

54.     There are questions of law and fact common to the Class which

predominate over any questions affecting only the individual class members, including:

         a.  Whether Defendants employed Plaintiff and the Class within the meaning of the New York law;

         b.  Whether Plaintiff and Class members are paid at least the minimum wage for each hour worked in New York City under the New York Labor Law;

         c.  Whether Plaintiff and Class members are entitled to and are paid overtime under New York Labor Law;

         d.  Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiff and the Rule 23 Class spread-of-hours compensation as required by the New York Labor Law;

         e.  Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

         f.  Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff's and the Rule 23 Class' start of employment and/or timely thereafter;

         g.  Whether Defendants provided paystubs detailing full and accurate rates of pay and credits taken towards the minimum wage to Plaintiff and the Rule 23 Class on each payday; and

         h.  At what common rate or rates subject to common method of calculation were and are Defendants required to pay the Class members for their work.

*__Typicality__*

55.     Plaintiff's claims are typical of those claims which could be alleged by

any member of the Class, and the relief sought is typical of the relief that would be

sought by each member of the Class in separate actions.  All the Class members were

subject to the same corporate practices of Defendants, as alleged herein, of failing to pay

minimum wage and/or overtime compensation. They were, furthermore, subject to illegal

deductions. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair, wrongful and/or illegal acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

### *Adequacy*

56.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent representing Plaintiffs in both class action and wage and hour employment litigation cases.

### *Superiority*

57.     A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small from the perspective of a class action analysis, the expense and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs visited upon them. Moreover, important public interests will be served by addressing the matter as a Class Action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources. Treating the claims as a Class Action would result in a significant saving of these costs. The prosecution of separate actions by

individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of a common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this controversy as a Class Action.

58.     Upon information and belief, Defendants and other employers  throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so might harm their employment, future employment, and future efforts to secure employment. Class actions provide Class members who are not named in the Complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## CAUSES OF ACTION
### COUNT I
**[Violations of the Fair Labor Standards Act – Failure to Pay Overtime
Brought on behalf of Plaintiff Chunhong Mei and the FLSA Collective]**

59.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

60.     Defendants knowingly and willfully failed to pay overtime compensation at the rate of one and one-half times (1.5x) the regular rate for hours worked in excess of forty (40) hours per week, in violation of the FLSA.

61.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee

receives compensation for employment in excess hours at a rate not less than one and one-half times the regular rate at which [she/he] is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

62.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

63.     Defendants' failure to pay Plaintiff and the FLSA Collective their overtime pay violated the FLSA.

64.     At all relevant times, Defendants had, and continue to have, a policy and practice of refusing to pay overtime compensation at the statutory rate of time-and-a-half to Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

65.     In order to facilitate their exploitation of Plaintiff's and FLSA Collective's labor, Defendants willfully failed to notify Plaintiff and FLSA Collective of the requirements of the employment laws, in their principal language, knowing that failing to pay them the statutory overtime rate when due would financially injure Plaintiff and Collective Action members.

66.     Because of Defendants' willful violation of the FLSA, Plaintiff and the Class members are entitled to recover from Defendants, jointly and severally, unpaid overtime compensation, and an equal amount in the form of liquidated damages, as well

as reasonable attorneys' fees and costs of the action, including pre-judgment interest, all in an amount to be determined at trial.

## COUNT II

### [Violation of New York Labor Law – Failure to Pay Overtime Brought on behalf of Plaintiff and Rule 23 Class]

67.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

68.     Defendants knowingly, willfully and intentionally failed to pay overtime compensation for hours worked in excess of forty (40) hours a week at a rate of one and one-half times (1.5x) the regular hourly rate, which must be equal to or greater than the minimum wage as set forth in NNYLL §652, in violation of NYCRR Tit. 12, §142-2.2.

69.     Pursuant to NYLL §§ 198.1-a and 663, an employer who willfully fails to pay overtime as required by the Minimum Wage Act shall be liable, in addition to the amounts of underpayments, for liquidated damages equal to one hundred percent (100%) the total of such underpayments found to be due to the employee, and interest.

70.     At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to Plaintiffs at one and one-half times the hourly rate the Plaintiff and the Class are entitled to.

71.     Defendants' failure to pay Plaintiffs the overtime pay violated the NYLL.

72.     Defendants' failure to pay Plaintiffs was not in good faith.

73.     Because of Defendants' willful violation of the NYLL, Plaintiff and members of the Class are entitled to recover from Defendants, jointly and severally, their unpaid overtime compensation, and an amount equal to one hundred percent (100%) of

their unpaid wages in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, in an amount to be determined at trial.

## COUNT III
### New York: Spread of Hours Violation

74.     Plaintiff re-alleges the preceding paragraphs with the same force and effect as though set forth fully herein.

75.     Upon information and belief, Defendants regularly and knowingly required members of the Class to work in excess of ten (10) hours per day in New York.

76.     Defendants knowingly, willfully and intentionally failed to pay Plaintiff employees one extra hour's compensation at minimum wage rate for every day in which the interval between Plaintiffs' start and end times exceeded ten hours, in violation of New York State labor regulations. N.Y. Comp. Codes & Regs. Title 12, §§ 142-2.4.

77.     12 NYCRR 137-1.7 requires that "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which ... the spread of hours exceeds 10 hours [in a day]."

78.     Consequently, by failing to pay to the Plaintiff an additional hour's pay at the basic minimum hourly wage when Plaintiff worked more than 10 hours in a day, Defendants violated 12NYCRR 137-1.7.

79.     Under the premises, Defendants have violated 12 NYCRR 137-1.7 and are liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees and costs, pursuant to the above cited Labor Law and regulatory sections.

## COUNT IV

### [Violation of New York Labor Law – Failure to Provide Meal Periods
### Brought on behalf of Plaintiff and the Rule 23 Class]

80.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

81.     NYLL §162 requires that employers provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11:00 A.M. to 2:00 P.M.; an additional meal period between 5:00 P.M. and 7:00 P.M. of at least twenty (20) minutes for employees whose shift started before 11:00 A.M. and continues later than 7:00 P.M.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 PM and 6 AM..

82.     Defendants failed to provide meal periods required by NYLL §162 for every day that the Rule 23 Class worked or work.

83.     Although the Department of Labor Commissioner may permit a shorter time to be fixed for meal periods than hereinbefore provided, such permit must be in writing and kept conspicuously posted in the main entrance of the establishment. No such permit is or has been posted.

84.     Defendants' failure to fully comply with these New York meal period provisions are violative of the requirements of NYLL §162. These violations were not in good faith.

## COUNT V

### New York Labor Law: Violation of Record-Keeping Requirements

85.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

86.     Defendants did not maintain and preserve true and accurate weekly payroll records for Plaintiffs, for a period not less than six years, required by NYCRR §146-2.1.

87.     As a result of Defendants' unlawful conduct, Plaintiff has suffered damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fees, pursuant to New York state law.

88.     Upon information and belief, Defendants failed to maintain accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiff's labor.

89.     Defendants' failure to maintain the requisite written records of actual hours worked and true wages earned by Plaintiffs was not in good faith.

## COUNT VI
### New York Labor Law: Violation of Time of Hire Wage Notice Requirement
### [On behalf of Plaintiff and Rule 23 Class]

90.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

91.     The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer. NYLL §195-1(a).

92.     Defendants intentionally failed to provide notice to employees in violation of New York Labor Law §195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their first day of employment.

93.     Defendants not only did not provide notice to Plaintiff at Time of Hire, but failed to provide notice to the Plaintiff even after the fact.

94.     Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $50.00 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law §198(1-b).

## COUNT VII
### New York Labor Law §§195 and 661; 12 NYCRR §142-2.6
### Failure to Comply with Notification Requirements and to Maintain Records
### [On behalf of Plaintiff and Rule 23 Class]

95.     Plaintiff re-alleges all preceding paragraphs.

96.     The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

97.     Section 195 sets out notice and record-keeping requirements governing employers in the State of New York. Employers are required to keep true and accurate records reflecting the Plaintiffs' employment. Effective October 26, 2009, employers are required to notify employees in writing at the time of hiring of, *inter alia*, the rate of pay and, for employees who are eligible for overtime, the overtime rate of pay. The defendants herein, jointly and severally, are in violation of NYLL §195.

98.     Pursuant to 12 NYCRR §142-2.6, employers are also required to establish, maintain and preserve for not less than six years, weekly payroll records which, shall show for each employee, *inter alia*: name and address; social security number; wage rate; the number of hours worked daily and weekly, including time of arrival and departure for each employee working a split shift or spread of hours exceeding ten (10) hours; the amount of gross wages; deductions from gross wages; allowances, if any, claimed as part of the minimum wage; and the net wages paid.

99.     By failing to maintain true, accurate and legible records for Plaintiff of the time worked on a daily and weekly basis, overtime rate, and times of arrival and departure from their restaurant, the Defendants violated 12 NYCRR §142-2.6.

100.    Due to Defendants' violations of the NYLL, the Plaintiffs herein are entitled to recover from Defendants, jointly, and severally, $250 for each workday of the violation, up to $5,000 together with costs and attorneys fees pursuant to NYLL 198(1-d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of herself, and on behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)   Authorizing Plaintiff Chunhong Mei at the earliest possible time to give notice of this Collective Action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of a court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been

filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

   b)  Certification of this case as a Collective Action pursuant to the FLSA;

   c)  Issuance of notice pursuant to 29 U.S.C. 216(b) to all similarly situated members of the FLSA opt-in Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to U.S.C. 216(b), and appointing Plaintiff and her counsel to represent the Collective Action Members;

   d)  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and New York Labor Law;

   e)  An injunction against Corporate Defendant, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in the unlawful practices set forth herein;

   f)  An award of unpaid Minimum Wage and Overtime wages due under the FLSA and New York Labor Law to Plaintiff and the Collective Action members plus compensatory and liquidated damages in the amount of one hundred percent (100%) under the current N.Y. Wage Theft Prevention Act;

   g)  An award of Liquidated and/or Punitive Damages as a result of Defendants' knowing and willful failure to pay wages at least at the hourly Minimum Wage, and Overtime compensation pursuant to 29 U.S.C. §216.

   h)  Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

   i)  Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide paystubs with requisite and compliant information on each payday;

j)   An award of Liquidated Damages and/or Punitive Damages as a result of Defendants' willful failure to provide Overtime compensation and Spread-of-Hours premium pursuant to New York Labor Law;

k)   An award of costs and expenses of this action, together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

l)   An award of prejudgment and post-judgment interest as appropriate;

m)   Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent (15%), as required by NYLL §198(4); and

n)   Such other and further legal and equitable relief as this Court deems necessary, just and proper.


Dated: Flushing, New York
         April 13, 2019                                    /s/ Ricardo R. Morel_____.
                                                           Ricardo R. Morel, Esq. (RM2693)
                                                           *Attorney for Plaintiff, proposed*
                                                           *FLSA Collective and proposed*
                                                           *Class Plaintiffs.*
                                                           39-15 Main Street – Suite 318
                                                           Flushing, New York 11354
                                                           (454) 362-8960
                                                           Esquire1998@gmail.com